UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

| | |
|---|---|
| PHOENIX INSURANCE COMPANY, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, and ST. PAUL SURPLUS LINES INSURANCE COMPANY,<br><br>Plaintiffs/Counter-Defendants,<br><br>v.<br><br>WEHR CONSTRUCTORS, INC.,<br><br>Defendant/Counter-Plaintiff. | CIVIL ACTION NO. 0:22-7-KKC<br><br><br>**OPINION AND ORDER** |

*** *** ***

This matter is before the Court on Defendant/Counter-Plaintiff Wehr Constructors, Inc.'s motion for reconsideration pursuant to Federal Rule of Procedure 59(e). (DE 55.) For the following reasons, the Court denies the motion.

## I. BACKGROUND

### A.   The Bond Litigation

Defendant/Counter-Plaintiff Wehr Constructors, Inc. ("Wehr") entered into a contract with St. Claire Medical Center, Inc. ("St. Claire") for the construction of a medical services pavilion. (DE 1 ¶ 25.) Wehr obtained a performance bond from Travelers Casualty & Surety Company of America ("Travelers Surety") for the work. (*Id.* ¶ 26.) Pursuant to the bond agreement, Travelers Surety was the obligor, St. Claire was the obligee, and Wehr was the principal. (*St. Claire Medical Center, Inc. v. Travelers Casualty & Surety Company of America, et al.*, Civil Action No. 0:19-cv-23-HRW (E.D. Ky. Mar. 4, 2019) (hereinafter "the Bond Litigation"), ECF No. 44 ¶ 17.) Wehr and Travelers Surety were jointly and severally

1

liable for the performance of the contract. (*Id.* ¶¶ 19-20.) In effect, this meant that a breach of the contract by Wehr triggered Travelers Surety's obligations under the performance bond. (*Id.* ¶¶ 17, 24.)

Due to Wehr's alleged breaches, St. Claire terminated the construction contract on January 31, 2019. (*See* DE 41-4.) The termination letter reads as follows:

> Based on the Architect's certification of the multiple breaches of contract by Wehr Constructors, we are hereby providing notice that St. Claire Regional Medical Center is terminating its Medical Services Pavilion Construction Agreement executed by Wehr Constructors, Inc. on April 20, 2016, pursuant to the Termination For Cause provisions of Article 14.2 of the General Conditions of the Contract.
>
> It is the intention of St. Claire to cooperate with your Surety to finalize construction in accordance with contract expectations in the most economical fashion possible consistent with industry standards of construction. To this end, St. Claire, or more likely the Surety, may seek to employ the services of Wehr's former subcontractors and sub-subcontractors. Since this is contemplated by terms of the terminated contract, we request that you inform your client of St. Claire's intent and its right to do so by the terms of the contract.

(*Id.*)

On March 4, 2019, St. Claire filed a lawsuit against Travelers Surety to enforce the terms of the performance bond because of the alleged contract breaches. (*See* Bond Litigation, ECF No. 44.) In its complaint, St. Claire also claimed that Travelers Surety failed to fulfill its obligations under the bond. (*Id.* ¶¶ 71-77.) St. Claire requested a declaration that Travelers Surety was obligated to assume all Wehr's debts, liabilities, and obligations under the contract, and sought related damages. (*See id.* at 15.) Notably, St. Claire did not assert any claims against Wehr or otherwise seek damages against Wehr.

Travelers Surety subsequently moved under Federal Rule of Civil Procedure 20 to permissively join Wehr as a party defendant to the Bond Litigation. (Bond Litigation, ECF No. 53.) Travelers Surety argued that the addition of Wehr as a party defendant was

appropriate because its obligations were ultimately dependent on whether Wehr breached the contract with St. Claire. (*Id.*, ECF No. 53-1 at 9.) St. Claire opposed the motion because "Rule 20 is not available to defendants seeking to join additional defendants against whom no claims are being made," and "neither Plaintiff nor Defendant [asserted] a claim against Wehr." (*Id.*, ECF No. 56 at 4-5, 10.) The Court granted the motion and added Wehr as a party. (*Id.*, ECF No. 58.) However, St. Claire never amended its complaint to bring any claims against Wehr, nor did any party assert any claims for damages against Wehr in the action. After Wehr was added as a defendant, it filed an Answer, stating "[t]he record of this proceeding, at least those filings now available to newly-joined Wehr, discloses no currently-pending direct claims or causes of action against Wehr." (DE 66 at 2.)

The parties eventually settled the matter. (Bond Litigation, ECF No. 170.) As part of the settlement, Wehr paid a sum to St. Claire. (DE 41 at 9; DE 44 at 5.)

### B. The Instant Litigation

Wehr requested reimbursement from Plaintiffs/Counter-Defendants Phoenix Insurance Company ("Phoenix"), Travelers Property Casualty Company of America ("Travelers Property"), and St. Paul Surplus Lines Insurance Company ("St. Paul") (collectively, "Plaintiffs") for the fees it incurred from its participation in the Bond Litigation. (*See* DE 1 ¶ 32.) Wehr maintained three different types of insurance coverage with these entities: (1) a commercial general liability policy with Phoenix; (2) a commercial excess liability policy with Travelers Property; and (3) a professional liability policy with St. Paul. (*Id.* ¶¶ 11, 16, 21.) According to Wehr, those three policies provided it with coverage applicable to the claims raised in the Bond Litigation. (*Id.* ¶ 35.) On November 23, 2021, Plaintiffs formally denied Wehr coverage. (DE 41-1 ¶ 34.) In correspondence immediately prior to the denial of coverage, counsel for Wehr wrote, "St. Claire . . . has never asserted an affirmative claim against Wehr for damages. Of course, St. Claire has filed dozens of

3

documents complaining about the construction of the [medical services pavilion], but deliberately avoided any direct claims against and fight with Wehr." (DE 44-9 at 2.) After settling the Bond Litigation, Wehr renewed its request for coverage. (DE 41-1 ¶ 38.)

On January 19, 2022, Plaintiffs filed the instant action against Wehr, seeking a declaration of their rights as to their duty to defend and duty to indemnify Wehr in connection with the Bond Litigation. (*See* DE 1.) In response, Wehr filed a counterclaim against Plaintiffs, alleging common-law bad faith, violations of the Kentucky Unfair Claims Settlement Practices Act, and breach of contract for failure to defend and indemnify Wehr in the Bond Litigation. (*See* DE 12.) Wehr also requests a declaratory judgment regarding Plaintiffs' rights, duties, and responsibilities under their respective policies in connection with the Bond Litigation. (*Id.*)

Wehr moved for partial summary judgment regarding whether Plaintiffs Phoenix and St. Paul had a duty to defend it in the Bond Litigation pursuant to their respective policies. (DE 41.)

### C. The Text of the Policies

As relevant here, both insurance policies include "duty to defend" clauses.

Phoenix has the "duty to defend the insured against any 'suit' seeking those damages." (DE 12-1 at 19.) "[T]hose damages" are "damages because of 'bodily injury' or 'property damage' to which this insurance applies." (*Id.*) A "suit" is a "civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged." (*Id.* at 33.)

St. Paul has the "duty to defend the 'insured' against any 'claim' for 'loss' to which this insurance applies." (DE 12-3 at 16.) A "claim" is "a written demand alleging liability on the part of the 'insured' for 'loss' caused by an act, error, or omission." (*Id.* at 39.) "Loss" means compensatory, punitive, or exemplary damages. (*Id.* at 44.)

4

### D. Partial Summary Judgment Denied

After considering each policy, the Court denied Wehr's motion for partial summary judgment and found that each insurance company did not have a duty to defend under their respective policies. (DE 11.) First, Phoenix did not have a duty to defend because its policy only covered suits seeking damages. (*Id.* at 7-8.) Since St. Claire did not seek any claims for damages against Wehr in the Bond Litigation, Phoenix had no duty to defend. (*Id.*)

Next, the Court found that St. Paul did not have a duty to defend. St. Paul's policy covered any "claim for loss." (*Id.* at 8-11.) Wehr argued that the 2019 Termination Letter sent by St. Claire qualified as a claim for loss. (*Id.* at 9.) The Court, however, disagreed, and found that the letter was not a demand for loss because it did not request Wehr to take any action or pay any damages because of its alleged breaches. (*Id.*) Rather, the letter only notified Wehr of St. Claire's termination of the contract. (*Id.*)

The Court also rejected Wehr's argument that the Termination Letter's request for loss was found in its reference to § 14.2 of the General Contract which outlines circumstances under which St. Claire could terminate the contract. (*Id.*) Specifically, § 14.2.4 stipulates that upon termination of the contract, if the unpaid balance of the contract sum exceeded the cost of finishing work, then the excess was to be paid by Wehr. (*Id.* at 10.) The Court found that this did not constitute a claim for loss because the Termination Letter did not specifically reference § 14.2.4 nor indicate that Wehr owed St. Claire any payment for costs or damages under this clause. (*Id.*)

The Court refused to consider whether the 2019 Architect Report constituted a claim because Wehr raised that argument for the first time in its reply brief. (*Id.* at 11.) Since arguments raised for the first time in a reply brief are waived, the Court could not conclude that St. Paul had a duty to defend based on the 2019 Architect Report. (*Id.*)

5

This ruling is the subject of Wehr's motion to reconsider.

## II. ANALYSIS

The Court may grant a Rule 59(e) motion for only limited reasons: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010). A plaintiff cannot use a Rule 59 motion or a post-judgment Rule 15 motion "to raise arguments which could, and should, have been made before judgment was issued." *Id.* (quoting *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)). Neither may a party use a 59(e) motion to relitigate issues previously considered and resolved by the Court. *See, e.g.*, *Franklin v. Franklin County*, 2023 WL 4406884, *2 (E.D. Ky. July 7, 2023) ("A motion to reconsider an interlocutory order is not an invitation for the parties to relitigate the issue."); *McCoy v. Lake Cumberland Regional Hospital, LLC*, 2019 WL 1960335, *2 (E.D. Ky. May 2, 2019) ("Re-argument is not an appropriate purpose for a motion to reconsider. . . . The Plaintiffs are attempting to use a Rule 59(e) motion to relitigate the issue, which is not a reason to grant a motion to reconsider.").

Wehr argues that the Court's denial of partial summary judgment was a "manifest injustice," and claims that St. Claire's pre-litigation communications with Wehr satisfied St. Paul's policy definition of a "claim for loss". (DE 55 at 3.) Wehr points to the Termination Letter, § 14.2.4 of the Project Contract, and the Bond Litigation pleadings. These, however, are arguments that even Wehr acknowledges it already raised in its initial motion for partial summary judgment and issues that the Court has already ruled on in its previous order. Wehr cannot use a 59(e) motion to relitigate the same arguments. To the extent that Wehr makes new arguments with respect to these communications, Wehr has not provided any reason why it could not have previously made such arguments.

6

Wehr also argues in a footnote that the Court erred in determining Wehr waived its arguments concerning the 2019 Architect Letter for two reasons: (1) the case that the Court relied on, *Sanborn*, concerned a criminal appeal to the Sixth Circuit rather than a civil pre-trial proceeding and (2) *Sanborn* did not involve this Court's Local Rule 7.1. (DE 55 at 5 n. 4.) Neither of these arguments are persuasive. First, *Sanborn* involved a petition for a writ of habeas corpus, which is a civil matter, and nonetheless, the Sixth Circuit courts have consistently held in civil cases that arguments raised for the first time in reply briefs are waived. *Sanborn v. Parker*, 629 F.3d 554 (6th Cir. 2010); *Am. Trim, L.L.C. v. Oracle Corp.*, 383 F.3d 462, 477 (6th Cir. 2004). Second, Wehr's argument that *Sanborn* is distinguishable because it did not involve this Court's local rules is unpersuasive because the Eastern District courts have also consistently held that it is inappropriate to raise an argument for the first time in a reply brief. *See, e.g., Johnson v. International Laboratories, LLC*, 2019 WL 1877289, *2 n.2 (E.D. Ky. April 26, 2019) ("Reply briefs are designed for a moving party to *reply* to a response brief, not provide the moving party a second chance to file the initial motion."); *Bustetter v. Standard Ins. Co.*, 2018 WL 11375143, *3 (E.D. Ky. Oct. 23, 2018) ("Plaintiff only raised the 'completeness of the record' justification in his reply, and therefore waived this argument."); *EP Acquisition Corp. v. Maxxtrade, Inc.*, 2011 WL 4102114, *5 (E.D. Ky. 2011) ("The Sixth Circuit has consistently condemned arguments raised for the first time in reply briefs. . . . To ensure a complete record in the event of appellate review, the Court will not strike portions of the reply brief. . . . but it will not consider them in deciding whether to vacate the Award.").

In addition to these arguments, Wehr contends that the Architect Letter was within the bounds of the parties' briefing on the issues framed in Wehr's initial motion because Wehr had referred to the entire text of the Termination Letter which specifically references the

Architect Letter. (DE 55 at 5 n. 4.) Wehr argues that the reply brief merely expanded upon its argument. (*Id.*) Again, the Court does not find this argument compelling. In its partial summary judgment brief, Wehr does not mention or reference the content of the Architect Letter once. (DE 41.) The Architect Letter was not even included as an exhibit to the partial summary judgment brief, even though the Termination Letter was included on its own. (DE 41-4.) Wehr only attached the Architect Letter as an exhibit in its reply, where it was specifically mentioned for the first time in the parties' briefings. (DE 49-1.) Accordingly, the Court cannot find that the Architect Letter was properly raised in Wehr's motion for partial summary judgment. Because of this, the Court will not reconsider Wehr's argument that the pre-litigation communications including the Architect Letter constituted a claim for loss under St. Paul's policy.

For the foregoing reasons, Wehr's motion to reconsider (DE 55) is DENIED.

This 3rd day of January, 2024.

*Karen K. Caldwell*
KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY